# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

State of Illinois. et. al

**Plaintiff(s)**

08 cv 2831

Case No. 08-CV-2831

v.

Sandry Abdul Rotteen Ai Beg

**Defendant(s)**

Judge Gottschall

Mount Prospect Police Department Arrest Report, And transcript from Probable Cause Hearing and ARRAIGNMENT Court.

# FILED

JUL 17 2008  YM

Jul 17, 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# MOUNT PROSPECT POLICE DEPARTMENT
## ARREST REPORT

| CASE NUMBER | 08-4965 |
|---|---|

| YEAR | MAKE | MODEL | BODY STYLE | (TOP) COLOR (BOTTOM) |
|---|---|---|---|---|
| 03 | Ford | Expedition | SUV | Green / Green |

| LICENSE NUMBER | MONTH | YEAR | STATE | V.I.N. |
|---|---|---|---|---|
| None | -- | -- | -- | 1FMFU16L73LA20637 |

| VEHICLE IMPOUNDED | LOCATION OF ARRESTEE'S VEHICLE |
|---|---|
| ☒ YES ☐ NO | Hillside Towing |

**VEHICLE DESCRIPTION CODES (UP TO 3)**

| | | |
|---|---|---|
| ☐ (BTR) BEATER | ☐ (BDM) BODY DAMAGE | ☐ (4WD) FOUR WHEEL DRIVE |
| ☐ (CUS) CUSTOM EQUIPMENT | ☐ (BGL) BROKEN / CRACKED GLASS | ☐ (TGL) TINTED GLASS |
| ☐ (MBP) MISSING BODY PARTS | ☐ (PRI) PRIMER ON VEHICLE | ☐ (TTP) T-TOP / SUN ROOF |
| ☐ (NOI) EXCESSIVE NOISE | ☐ (RUS) RUST ON VEHICLE | ☒ (GCD) GOOD CONDITION |

**VEHICLE USAGE**

| | | |
|---|---|---|
| ☒ (01) REGISTERED TO ARRESTEE | ☐ (04) SUSPICIOUS VEHICLE / PERSON | ☐ (08) TARGET OF OFFENSE / ATTACK |
| ☐ (02) USED BY ARRESTEE / REG. OTHER | ☐ (05) USED IN COMMISSION OF OFFENSE | ☐ (09) INVOLVED IN NON-TRAFFIC SERVICE |
| ☐ (03) PASSENGER IN VEHICLE | ☐ (06) INVOLVED IN ACCIDENT / TRAFFIC | ☐ (10) USED AS A WEAPON |

| TOWED TO: | TOWED BY | DATE / TIME TOWED |
|---|---|---|
| Hillside Towing | Hillside Towing | 03-13-08 1330 Hours |

| HOLD ON VEHICLE | REASON |
|---|---|
| ☒ YES ☐ NO | D.L. & Insurance |

| U.S. CITIZEN? | IF NO, LIST COUNTRY OF CITIZENSHIP | CONSULATE TO BE CONTACTED? | IF YES, CONTACT FAX SENT |
|---|---|---|---|
| ☐ YES ☒ NO | Morocco | ☐ YES ☒ NO | ☐ YES (Attach Fax Confirmation) ☐ NO |

| 1. C – V – W | NAME (LAST, FIRST, MIDDLE) | ADDRESS | ☐ M.P. |
|---|---|---|---|
| C | Officer Hoskinson #233 | MPPD | |

| SEX | RACE | DOB (M/D/Y) | HOME PHONE | HOURS AVAILABLE | WORK PHONE | EXTENSION | HOURS AVAILABLE |
|---|---|---|---|---|---|---|---|
| ~ | - | ------- | ----- | ------ | 847 870-5656 | None | Days |

| 2. C – V – W | NAME (LAST, FIRST, MIDDLE) | ADDRESS | ☐ M.P. |
|---|---|---|---|
| | | | |

| SEX | RACE | DOB (M/D/Y) | HOME PHONE | HOURS AVAILABLE | WORK PHONE | EXTENSION | HOURS AVAILABLE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

☒ FIELD CASE    ☐ ALCOHOL INFLUENCE    ☐ ACCIDENT    ☐ SUPPLEMENTAL    ☐ ET REPORT    ☐ FELONY 101

☒ PROPERTY INVENTORY ☒ IMPOUNDED / SEIZED VEHICLE ☐ OTHER (LISTED):

Bey was arrested for several vehicle registration violations and unlawful use of a weapon. Bey was transported to the MPPD where he was fingerprinted and photographed and placed into cell #3 to await a bond hearing.

| ARRESTING OFFICER | STAR # | ASSISTING OFFICER | STAR # |
|---|---|---|---|
| | Hoskinson #233 | | |
| APPROVING SUPERVISOR | STAR # | REVIEWER'S INITIALS | |
| | 8C3 | | Page 2 of 2 |

## *MOUNT PROSPECT POLICE DEPARTMENT*

| **DATE & TIME OF COMPLAINT**  13MAR08/1250 | **CASE NUMBER**    08-4965 |
|---|---|

**Bey's Employer**:
Mufti Security  773-319-0316

**Supervisor**:
Brown, Jerry  M/B  1/29/49
Bil Mar Management
4715 Vincennes, Chicago, IL 773-538-8517

**Illinois Department of Professional Regulation**
Staff Attorney: Deborah Alexander  312-814-2352

On 13MAR08 at 1250 hrs., I saw a green Ford Explorer driving S/B on Busse from Forest Cove.  The Ford had a "Moorish Nation" license plate.  Based upon my prior contact with the Illinois Secretary of State Police, that type of license plate is not valid in Illinois.  I activated my emergency lights and stopped the Ford at 2107 S. Busse Rd.  I asked the driver for his drivers license and proof of insurance.  The driver gave me a "Moorish National Road Travel" ID card in the name of Saadiq Bay.  I asked him where he was born. He said Illinois.  Bey said he has lived in Illinois all his life.  I asked Bey if he had a drivers license other than the Moorish ID. He said no.

Based upon the registration violation (class A misdemeanor), I arrested Bey.  I handcuffed Bey and searched him.  I asked him if he had any weapons. He said yes, he had a pistol in the Ford.  I asked him where it was at. He said under the seat.  I placed Bey in the rear of my squad and I searched the Ford.  I found a 9MM Ruger pistol on the floor under the second row middle seat.  The pistol barrel was facing the rear of the Ford with the grip within easy reach of the driver.  The pistol was loaded, uncased, unchambered and on safe.  I secured the pistol and later inventoried it.

I ran Bey thru SOS and there was no record on file for a drivers license.  I found a wallet in Bey's pocket containing identification cards for the state of Illinois and Indiana in the name of Robert Wakefield.  The drivers license for Wakefield in Illinois and Indiana were both valid.

I found a State of Illinois Permanent Employee Registration Card (PERC) card in the name of Robert Wakefield.  I did not find the Firearm Authorization Card which is required by Illinois law to identify armed security guards.  I asked Bey if he had this card and he said he had a card but it must be at his apartment.  Bey said he was a security guard and was headed to work.  I asked him what time he started work and he said 1400 hrs.  I asked him where he worked. He said Mufti Security and his boss was Jerry Brown.

I transported Bey to the station for processing.  I spoke to ASA Weldon.  After hearing the details regarding the case she approved the charge of Aggravated Unlawful Use of a Weapon.

I processed Bey and placed him in a cell to await a bond hearing.

I spoke with Jerry Brown.  Brown said Bey is an armed contracted security guard and he works at 4724 Vincennes providing security for Brown's company, Bil Mar Management.  Brown said he

| REPORTING OFFICER | STAR # | REPORTING OFFICER | STAR # |
|---|---|---|---|
| | Hoskinson/233 | | |
| APPROVING SUPERVISOR | STAR # | REVIEWER'S INITIALS | |
| | CMDR Adamczyk/803 | | Page 3 of 4 |

```
1    STATE OF ILLINOIS )
                      ) SS:
2    COUNTY OF COOK    )

3         IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
              COUNTY DEPARTMENT-CRIMINAL DIVISION
4
     THE PEOPLE OF THE       )
5    STATE OF ILLINOIS       )
                             )
6              Plaintiff,    )
                             )  No.  08 MC3 1476
7         vs.                )
                             )
8    ROBERT WAKEFIELD a/k/a, )
     SANDIG BAY,             )
9              Defendant.    )

10

11         REPORT OF PROCEEDINGS HAD at the hearing of

12   the above-entitled cause, before the Honorable Kay

13   Hanlon, one of the Judges of said court, on the 24th

14   day of April, 2008.

15         PRESENT:

16         HON. RICHARD A. DEVINE,
           STATE'S ATTORNEY OF COOK COUNTY, by
17         MS. KRISTIN PIPER,
           Assistant State's Attorney,
18             Appeared on behalf of the People;

19         MR. SADIG BAY,
               Defendant, appeared pro se.
20
                         *****
21   JENNIFER ZANICHELLI
     Official Court Reporter
22   Circuit Court of Cook County, Illinois
     Criminal Division #084-003729
23

24
```

1

```
1           THE CLERK:  Robert Wakefield a/k/a Sadig Bay.

2           THE COURT:  This is case number 08 MC3 1476. The

3      defendant is present in court on bond.

4               Sir, you are charged with an aggravated

5      unlawful use of a weapon, display of unauthorized

6      registration, traffic ticket for operating an uninsured

7      motor vehicle.  The public defender was appointed on

8      March 14th of '08.  The State asked for continuance for

9      hearing today.

10              First of all, State, are you ready?

11          MS. PIPER:  I am, Judge.

12          THE COURT:  Sir, you indicated to me you do not

13     want the public defender's representation.

14          THE DEFENDANT:  Yes.  If I may, I would like to

15     address the Court.

16          THE COURT:  Sure.

17          THE DEFENDANT:  Before I guess we get in to

18     things, I am here making special appearance in

19     appropriate person.   I am Morish making a special

20     appearance in person.  My status in law is a frequent

21     person meaning that I am jurisdiction of the court.  So

22     whoever have jurisdiction over me must prove to the

23     Court that they have jurisdiction for the case to

24     proceed.
```

1          MS. PIPER:  Judge, not at this time.

2          THE COURT:  You may call your first witness.

3          THE COURT:  Officer, keep your voice up, please.

4                          TOM HOSKINSON,

5     called as a witness on behalf of the People of the

6     State of Illinois, having been first duly sworn, was

7     examined and testified as follows:

8                       DIRECT EXAMINATION

9                               BY

10                        MS. PIPER:

11         Q    Officer, can you please state your name, your

12    star number and town you work for.

13         A    Officer Tom Hoskinson, H-o-s-k-i-n-s-o-n,

14    star 233 Mount Prospect police department.

15         Q    Is that located in Cook County, State of

16    Illinois?

17         A    Yes, it is.

18         Q    Were you working on March 13th of 2008 at

19    approximately 12:30 in the afternoon in the vicinity

20    of 2107 South Busse Road in Mount Prospect, Cook

21    County, Illinois?

22         A    Yes.

23         Q    At that time could you explain to the judge

24    what you saw?

1          A    I saw a Ford Expedition driving southbound on

2     Busse Road with license plates that were fictitious.

3          Q    Could you explain to the judge why you

4     believe those license plates were, in fact, fictitious?

5          A    The license plates were issued by Morish

6     Nation.  I made a phone call to the Secretary of State

7     checking status of that plate.  They said that was not

8     a valid plate in the State of Illinois or any other

9     state.  They have previous contacts.  It was a

10    fictitious plate.

11         Q    At that time did you pull the defendant over

12    at that point?

13         A    Yes, I did.

14         Q    Who was driving the car at that time?

15         A    The defendant.

16         Q    Could you please point to him and identify a

17    piece of clothing that he's wearing.

18         A    Camouflage jacket and dark vest.

19         MS. PIPER:  Let the record reflect the in-court

20    identification of the defendant.

21         THE COURT: It will.

22    BY MS. PIPER:

23         Q    At that time was defendant able to produce a

24    valid Illinois driver's license?

1          A    He was not.

2          Q    Did you place him under arrest at that time?

3          A    Yes, I did.

4          Q    Did you have a conversation with him

5    regarding any weapons in the car?

6          A    I asked him if there were any weapons or

7    contraband in the vehicle.

8          Q    What did the defendant tell you at that time?

9          A    He said, yes, there was a pistol in the

10   vehicle.

11         Q    Did you search the car at that time?

12         A    Yes.

13         Q    Could you explain to the judge what you

14   recovered?

15         A    Nine millimeter pistol that was behind the

16   front seat directly at the front edge of the rear seat

17   on the floor within reach of the driver.

18         Q    Was that gun loaded and uncased?

19         A    Yes, it was.

20         Q    Did you have a conversation with the

21   defendant with regard to the possession of that weapon?

22         A    Yes, I did.

23         Q    What, if anything, did the defendant say to

24   you?

```
 1      question at a time.  Pose your next question, please.
 2      BY MR. BAY:
 3          Q   You did not see my conveyance coming from
 4      Forest Grove --
 5          MS. PIPER:  Objection, your Honor.
 6          THE COURT:  I will overrule and let the officer
 7      answer the question.
 8              You may answer.
 9          THE WITNESS: Restate it.
10      BY MR. BAY:
11          Q   Did you or did you not see my conveyance
12      parked in the apartment complex at Forest Grove before
13      you seen me pull out of the apartment complex?
14          A   Yes, I did.
15          MR. BAY:  Your Honor, I would like to say at this
16      time to me that he has perjured against the stand.  He
17      said he seen me traveling along Elmhurst Road.
18          THE COURT:  You may argue after the close of the
19      evidence.  Ask another question, please.
20              Any more questions?
21          MR. BAY:  No.
22          THE COURT: State, do you have any redirect?
23          MS. PIPER:  Judge, I do not have any redirect.
24          THE COURT:  Thank you, Officer.  You may step
```

1      down.

2              State, any further witnesses to call?

3         MS. PIPER:  I do not have any further witnesses at

4      this point.

5         THE COURT:  State rests?

6         MS. PIPER:  State rests.

7         THE COURT:  Do you have any witnesses you would

8      like to call?

9         MR. BAY:  No, Ma'am.

10        THE COURT:  So you rest?

11        MR. BAY:  Yes.

12        THE COURT:  State, would you like to make closing

13     argument?

14        MS. PIPER:  Judge, I would waive opening and

15     reserve rebuttal.

16        THE COURT:  Sir, would you like to argue?

17        MR. BAY:  Yes.

18        THE COURT:  You may.

19        MR. BAY:  Your Honor, like I said before, my

20     conveyance was parked in my apartment complex.  He had

21     to see the conveyance before I pulled out the apartment

22     complex.  When I was pulling out the apartment complex,

23     he called another officer.  The officer that pulled

24     into my apartment complex seen me.  He made a U-turn

1    when I pulled out of my apartment complex.  That's when

2    the officer got behind me and pulled me over.  He

3    pulled me over at a Citgo gas station.

4         For two, I would like to say it's not

5    unlawful to travel on plates or have a driver's

6    license.  That's not a constitutional right to not have

7    a driver's license.  I explained that to him.  I had

8    documentation that verify my claim of me traveling on

9    my Moorish plates.

10        But at that time he wouldn't take heed to

11   that.  He searched my conveyance unconstitutionally.

12   He went in there without my consent, without no

13   warrant.  The semi-automatic was in my backseat.  I did

14   not give him authorization to search my conveyance for

15   one.

16        For two, it is not against the law to travel

17   on plates on your plates.  It's a constitutional right

18   that's given in the constitution and in Illinois

19   constitution that you can travel without driver's

20   license and without a license plate.  He went over

21   there with me; but like I said, I would not listen to

22   it the hostile behavior and that was about it.  But I

23   do have documentation for everything that I have with

24   me that could confirm everything I'm saying.

1          THE COURT: State, any response?

2          MS. PIPER: Yes, Judge. This was a proper stop by

3     the police officer. There were fictitious plates on

4     the car. The officer did run it by the Secretary of

5     State said, in fact, those were, in fact, fictitious

6     plates. They were not valid in the State of Illinois.

7     At that time the officer had properly pulled the

8     defendant over.

9          The defendant was not able to produce a valid

10    Illinois driver's license. He was properly placed

11    under arrest, and there was a proper lawful search of

12    his car incident to arrest; and the defendant told the

13    officer there was, in fact, a gun in the car.

14         There was a loaded uncased nine millimeter

15    Luger pistol located within reach of the defendant

16    immediately behind his car. Judge, this is a violation

17    of the law. We ask for finding of probable cause.

18         THE COURT: Well, at this stage I am here to

19    determine whether or not there's probable cause to

20    believe a crime was committed and the defendant

21    committed the crime. So at this point I will find

22    probable cause. There's no motion pending at this in

23    this courtroom.

24         If you want to file a motion, sir, you will

1    be transferred to room 109 which is a felony courtroom

2    in this building at 9:30 for arraignment.  That is a

3    proper place you feel appropriate as to the stop and

4    unlawful search; in your words, the unlawful search.

5              So what date are you suggesting for

6    arraignment?

7         MS. PIPER:  May 15th, if that's agreeable for

8    defendant.

9         THE COURT:  Sir, do you want to be here on

10   May 15th for this matter?

11        THE DEFENDANT:  June 17th?

12        THE COURT:  State, are you agreeable?  It's a long

13   date.  This is going to 109.  I don't know if the judge

14   will be too happy.

15        MS. PIPER:  June 5th.

16        THE COURT:  All right.  By agreement, June 5th

17   2008.  You will be in this building at 9:30 a.m. in

18   room 109.

19              (WHICH WERE ALL THE PROCEEDINGS HAD)

20                        *****

21

22

23

24

STATE OF ILLINOIS  )
                   )  SS:
COUNTY OF C O O K  )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT-CRIMINAL DIVISION

I, JENNIFER ZANICHELLI, an Official Court
Reporter in the Circuit Court of Cook County, County
Department, Criminal Division, do hereby certify that I
reported in shorthand the proceedings had at the
hearing of the aforementioned cause; that I thereafter
caused the foregoing to be transcribed, which I hereby
certify to be a true and accurate transcript taken to
the best of my ability of the proceedings had before
the Honorable Kay Hanlon, Judge of said Court.

_____
        Official Court Reporter
        CSR# 084-003729

14

```
 1    STATE OF ILLINOIS      )
                             )  SS:
 2    COUNTY OF C O O K       )

 3        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
        CRIMINAL DEPARTMENT - THIRD MUNICIPAL DEPARTMENT
 4
      THE PEOPLE OF THE STATE  )
 5    OF ILLINOIS,             )
                               )
 6              Plaintiff,     )
                               )
 7       vs.                   )   No.  08 C3 30227
                               )
 8                             )
      SAADIQ BEY,              )
 9                             )
                Defendant.     )
10

11              REPORT OF PROCEEDINGS had at the hearing

12    in the above-entitled cause before the HONORABLE

13    THOMAS P. FECAROTTA, JR., Judge of said court, on

14    the 5th day of June, 2008.

15       PRESENT:

16       HONORABLE RICHARD A. DEVINE,
         STATE'S ATTORNEY OF COOK COUNTY, by:
17       MR. MICHAEL ANDRE,
         ASSISTANT STATE'S ATTORNEY,
18          appeared on behalf of the People;

19
         The Defendant appeared pro se.
20

21

22
      MARY N. LEAHY
23    Official Court Reporter
      License No. 084-002409
24
```

1          THE CLERK:  People of the State versus Saadiq

2    Bey, AKA Robert Wakefield.

3          THE COURT:  What's your name, sir?

4          THE DEFENDANT:  Saadiq Bey.

5          THE COURT:  Are you also known as --

6          THE DEFENDANT:  No.

7          THE COURT:  Let me finish my question, please.

8    Are you also known as Robert Wakefield?

9          THE DEFENDANT:  No.

10         THE COURT:  You're not known as that person?

11         THE DEFENDANT:  No.  Your Honor, if I may --

12         THE COURT:  Hold on one second, please.  Do you

13   have a lawyer?

14         THE DEFENDANT:  No.

15         THE COURT:  Are you hiring a lawyer?

16         THE DEFENDANT:  No.

17         THE COURT:  I can't hear you.

18         THE DEFENDANT:  No.

19         THE COURT:  Do you plan on representing

20   yourself?

21         THE DEFENDANT:  I am, yes.

22         THE COURT:  Are you representing yourself, sir?

23         THE DEFENDANT:  Yes, I am.

24         THE COURT:  Let me explain something to you,

1    because the law requires me to do this.  You have

2    an absolute obligation -- or you have, of course, a

3    right to represent yourself.  But we're going to --

4    you're going to listen to some admonishments.

5              State, this is an information?

6        MR. ANDRE:  It is, Judge.

7        THE COURT:  You may proceed.

8        MR. ANDRE:  We're seeking leave to file

9    Information 08 C3 30227.  It's a two-count

10   information alleging the offense of aggravated

11   unlawful use of a weapon.

12       THE COURT:  Have you been sworn or affirmed to

13   the information?

14       MR. ANDRE:  Yes, Judge, I have.

15       THE COURT:  Leave to file the information is

16   granted.  Please tender a copy to Mr. Bey.

17       MR. ANDRE:  Judge, I've tendered a copy to Mr.

18   Bey in court.

19       THE COURT:  Mr. Bey, do you acknowledge receipt

20   of the copy?

21       THE DEFENDANT:  Yes, I do.

22       THE COURT:  What class is this, State?

23       MR. ANDRE:  It's a Class 4, Judge.

24       THE COURT:  All right.  Mr. Bey, what's your

1    plea to this, guilty or not guilty?

2        THE DEFENDANT:  I'm innocent of all charges,

3    your Honor.

4        THE COURT:  All right.  Hold on a second.  One

5    second, okay?  You'll have all the opportunity to

6    speak in a moment.

7        Mr. Bey, this information charges you with

8    the following.  I'm going to read it to you.

9        It alleges in Count 1 that on or about

10   March 13, 2008, in Cook County, you committed the

11   offense of aggravated unlawful use of a weapon in

12   that you knowingly carried in a vehicle a firearm

13   at a time when you were not on your own land or in

14   your own abode or fixed place of business, and the

15   firearm was uncased, loaded, and immediately

16   accessible at the time of the offense, in violation

17   of Chapter 720, Act 5 Section 24-1.6(a)(1)(3)(a) of

18   the Illinois Compiled Statutes, 2000, as amended.

19       Count 2 charges that you, on or about

20   March 13, 2008, in Cook County, committed the

21   offense of aggravated unlawful use of a weapon in

22   that you knowingly carried in a vehicle a firearm

23   at a time when you were not on your own land or in

24   your own abode or fixed place of business, and the

                                4

1    firearm was uncased, unloaded, and the ammunition

2    was immediately accessible at the time of the

3    offense in violation of Chapter 720 Act 5 Section

4    24-1.6(a)(1)(3)(b) of the Illinois Compiled

5    Statutes 2000, as amended.  This is a two-count

6    information.

7          Do you understand the nature of the

8    charges against you in the information?

9        THE DEFENDANT:  Yes.

10       THE COURT:  I have to advise you.  These are

11   the admonishments I have to give you.

12          You have an absolute right to represent

13   yourself, if you so choose, but you also have a

14   right to an attorney of your choice.  If you cannot

15   afford an attorney, if you're found to be indigent,

16   you would be entitled to have an attorney appointed

17   to you.

18          You're charged with a Class 4 felony.  If

19   convicted of this offense, although probationable,

20   you could be sentenced from a minimum of one to a

21   maximum of three years in the Illinois Department

22   of Corrections, a $25,000 fine, or both, followed

23   by one year mandatory supervisory release.  If you

24   qualified for an extended term because of a

1    qualifying previous conviction, I could sentence

2    you from a minimum of three to a maximum of six

3    years in the Illinois Department of Corrections, a

4    $25,000 fine, or both, followed by one year

5    mandatory supervisory release.

6            Knowing all of this, do you still wish to

7    represent yourself?

8        THE DEFENDANT:  Yes.

9        THE COURT:  Do you understand that you have a

10   right to an attorney and that if you are found to

11   be indigent or poor, that an attorney would be

12   appointed to you free of charge?  Do you understand

13   that?

14       THE DEFENDANT:  Yes.

15       THE COURT:  Knowing that, do you still wish to

16   represent yourself?

17       THE DEFENDANT:  Yes.  If I may?

18       THE COURT:  One second.  Do you understand that

19   if you decide to represent yourself -- are you an

20   attorney?

21       THE DEFENDANT:  No.

22       THE COURT:  Do you have any legal training?

23       THE DEFENDANT:  No.

24       THE COURT:  If you decide to represent

1   yourself, I have to hold you to the same standard

2   that I hold the other attorneys on the opposing

3   side.  In other words, I can't give you any extra

4   consideration simply because you're not a lawyer.

5   Do you understand that?

6        THE DEFENDANT:  Yes, sir.

7        THE COURT:  Knowing this, do you still want to

8   represent yourself?

9        THE DEFENDANT:  Yes.

10        THE COURT:  Okay.  All right.  State, any

11   discovery today?

12        MR. ANDRE:  Yes, Judge.  I am seeking leave to

13   file the State's motion for pretrial discovery and

14   answer to discovery.

15        THE COURT:  Granted.

16        MR. ANDRE:  I'm also going to tender to Mr. Bey

17   copies of police reports, including felony 101, the

18   complaints, the arrest report, lockup records,

19   supplemental report, narrative reports, vehicle

20   report, case report, and Mr. Bey's criminal

21   history.

22        THE COURT:  Do you acknowledge receipt of those

23   items, sir?

24        THE DEFENDANT:  Yes, I do.

1          THE COURT:  All right.  Do you have any motions

2     today?

3          THE DEFENDANT:  Yes.  I filed --

4          THE COURT:  First of all, do you have a motion

5     for discovery?

6          THE DEFENDANT:  Yes, I do.  I filed a notice of

7     removal.

8          THE COURT:  Motion for discovery.  That's not a

9     motion for removal.  That's why I'm asking you.

10         THE DEFENDANT:  No.

11         THE COURT:  Do you have an oral motion for

12    discovery?

13         THE DEFENDANT:  No.

14         THE COURT:  All right.  Go ahead.

15         THE DEFENDANT:  I filed a notice of removal in

16    the Federal District Court.

17         THE COURT:  Of removal of this case?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Where is that motion?

20         THE DEFENDANT:  I filed it --

21         THE COURT:  So you're asking leave to file that

22    in court, correct?

23         THE DEFENDANT:  Yes.

24         THE COURT:  All right.  State, did you -- did

1    you give the State a copy?

2        MR. ANDRE:  Judge, I acknowledge receipt.

3        THE COURT:  All right.  Are you ready to

4    proceed on this motion today?

5        THE DEFENDANT:  No.

6        THE COURT:  No, you're not?

7        THE DEFENDANT:  No.

8        THE COURT:  Why not?

9        THE DEFENDANT:  What motion?  You're talking

10   about the case?

11       THE COURT:  No.  You're filing a motion for

12   removal, correct?

13       THE DEFENDANT:  Yes.

14       THE COURT:  Are you ready for a hearing on that

15   motion today?

16       THE DEFENDANT:  Yes.

17       THE COURT:  This was filed in March, correct?

18       THE DEFENDANT:  Yes, it was -- no, filed in

19   May.  May the 15th.

20       THE COURT:  This says file stamped March 21st

21   at 4:12 p.m.

22       THE DEFENDANT:  No.  Notice of removal.  That

23   was something else.

24       THE COURT:  Oh, okay.  Are you ready for a

1    hearing on that motion today, sir?

2    THE DEFENDANT:  Yes.

3    THE COURT:  State, are you ready?

4    MR. ANDRE:  I can be, Judge, yes.

5    THE COURT:  Pass it for a hearing on that

6    motion.  Have a seat, please.

7                    (Whereupon, the case was passed.)

8    THE COURT:  People versus Bey, also known as

9    Robert Wakefield.

10           This was passed for a hearing on

11   defendant's motion for a notice of removal that he

12   filed pro se.

13           Are you ready to argue your motion, sir?

14   THE DEFENDANT:  Yes, I am.

15   THE COURT:  State, are you ready?

16   MR. ANDRE:  Yes, Judge.

17   THE COURT:  You may proceed, sir.

18   THE DEFENDANT:  For the record, your Honor, I'm

19   here making an American --

20   THE COURT:  Keep your voice up, sir.

21   THE DEFENDANT:  (Continuing) -- making a

22   special appearance, in proprio persona sui juris --

23   proceeding sui --

24   THE COURT:  You have to keep your voice up.

1          THE DEFENDANT:  My status at law is I'm a free

2     white person.  This notice of removal was filed,

3     like I said, last month, on May the 15th.  I

4     contacted the United States District Court Eastern

5     Division, and from my understanding in the Federal

6     Rules of Civil Procedure, once a notice of removal

7     is filed, the State has 30 days to do a remand.

8     And upon that time, no court proceedings shall move

9     forward until they hear from the Federal District

10    Court.  That's from my understanding.

11          The notice of removal that I filed is in

12    regards to a diversity of citizenship action.  And

13    in that notice of removal, in regards to the

14    diversity of citizenship action -- do you want me

15    to read through it or --

16         THE COURT:  This is your opportunity to argue

17    your motion, sir.  However you do it is up to you.

18    I'm not going to tell you how to do it.  That would

19    not be correct, okay?

20         THE DEFENDANT:  I'm not asking you to help me

21    really, but I'm just saying it's kind of lengthy.

22    And basically, I mean, with the notice of removal,

23    from my understanding, when you file it, the State

24    has 30 days.  But the State still has to prove if

11

1   I'm coming into court today, the State still has to

2   prove that they have jurisdiction.  If jurisdiction

3   is not -- if they can't prove that they have

4   jurisdiction, then the case must be dismissed with

5   prejudice.

6          And then further, that, with a notice of

7   removal, according to the Federal Rules of Civil

8   Procedure, if the State cannot move forward and

9   they have answer from the federal level with the

10  United States District Court, then therefore, why

11  are we proceeding with this case to moving forward,

12  if I filed a notice of removal on the federal

13  level, changing venue, in front of municipal from a

14  state level to federal level?

15       THE COURT:  Anything else?

16       THE DEFENDANT:  No.

17       THE COURT:  State, any response?

18       MR. ANDRE:  Just that it's baseless in law,

19  Judge, ask that it be stricken.

20       THE COURT:  All right.  The record reflects

21  that Counsel's motion alleges that the State does

22  not have jurisdiction and that the Court must

23  transfer the case to a federal court because the

24  defendant filed his notice of removal.

12

1          I do not read the law that way.  The State

2     has jurisdiction to charge you in state court.  It

3     may come out in further motions, or it may come out

4     during the scope of a trial that the State may not

5     have jurisdiction -- would you have a seat, sir, or

6     something -- otherwise, I have no way of knowing

7     that because Mr. Bey did not call any witnesses to

8     his motion.

9          So the motion to remove this matter to

10    Federal District Court will be denied.  If there's

11    any further motions to dismiss for basis of a lack

12    of jurisdiction, of course, the Court would always

13    listen to that motion.  But the motion to remove

14    this matter to Federal Court is denied.

15       THE DEFENDANT:  Can I say something, your

16    Honor?

17       THE COURT:  This motion is over.  We don't

18    rehash things.  That's why I asked you to do

19    whatever you want on your motion.

20          Now, do you have any other motions

21    pending, Mr. Bey?

22       THE DEFENDANT:  No.  I filed motions before.

23       THE COURT:  What other motions do you have

24    pending?  I don't know what you did before.  It

1    wasn't in front of me.

2        THE DEFENDANT:   It was certified demand for

3    proof of jurisdiction.   Also cancelment (sic) of

4    bond --

5        THE COURT:   Cancelment of the bond?

6        THE DEFENDANT:   Bond was canceled.

7        THE COURT:   I don't know what that means.

8        THE DEFENDANT:   Then also --

9        THE COURT:   This is what I'm talking about,

10   about you representing yourself.   Okay?   You're

11   acting -- you're trying to act like a lawyer, and

12   quite frankly, you don't know what you're doing.

13             So if I were you, I would at least seek

14   some advice.   I mean, that's the best advice I can

15   give you.   Because I sure would hate to see you not

16   get every opportunity that's availed to you for

17   your defense.   So don't you think it's wise that

18   you at least talk to a lawyer?

19        THE DEFENDANT:   I'm okay.

20        THE COURT:   Okay.   Okay, Mr. Boy.   All right.

21   What other motions do you have pending?

22        THE DEFENDANT:   I have an affidavit of special

23   appearance that I filed.   So that was three

24   affidavits that I filed.

14

1          THE COURT:  What's the motion, though?

2          THE DEFENDANT:  The motion?

3          THE COURT:  Yes.

4          THE DEFENDANT:  That was filed previously.

5          THE COURT:  What is your motion, sir?

6          THE DEFENDANT:  Motion to, you know, dismiss

7     the case.

8          THE COURT:  Why?

9          THE DEFENDANT:  For lack of jurisdiction --

10         THE COURT:  Where is that motion?

11         THE DEFENDANT:  I don't have it with me.

12         THE COURT:  Was it already filed?

13         THE DEFENDANT:  Yes, it was already filed.

14         THE COURT:  Is that the one that's entitled In

15    Propria Persona Special Appearance?  Is that it?

16         THE DEFENDANT:  That was -- them three

17    affidavits was filed awhile back.

18         THE COURT:  Was there a hearing on that?

19         THE DEFENDANT:  Yes, it was.  It was an

20    improper cause hearing.

21         THE COURT:  And that was denied?

22         THE DEFENDANT:  No, it wasn't denied.  She said

23    she was going to read it into the docket, but she

24    never did.  So when I approached her and came

1    before her --

2        THE COURT:  Who is her, the judge?

3        THE DEFENDANT:  Yeah, the judge.

4        THE COURT:  You're saying the judge didn't rule

5    on it?

6        THE DEFENDANT:  She ruled and said that the

7    officer had probable cause pulling me over.

8        THE COURT:  Okay.  Do you have any other

9    motions that you'd like me to consider?

10        THE DEFENDANT:  No, that's it.  It was a notice

11    of removal, from my understanding.

12        THE COURT:  Do you have any other motions at

13    this time?

14        THE DEFENDANT:  No.

15        THE COURT:  Do you have a motion for discovery?

16        THE DEFENDANT:  No, I don't.

17        THE COURT:  Even though you don't have a motion

18    for discovery, which you should, I'm going to order

19    the State to give you the discovery on the case,

20    okay?

21        THE DEFENDANT:  Yeah.

22        MR. ANDRE:  That has been tendered, Judge.

23        THE COURT:  All discovery now complete?

24        MR. ANDRE:  Yes, Judge.

1         THE COURT:  Do you want me to set it for trial?

2         THE DEFENDANT:  Yes, you can.

3         THE COURT:  Do you want a bench trial in front

4    of me, or do you want a jury trial?

5         THE DEFENDANT:  I'll take a jury trial.

6         THE COURT:  Okay.  What date are you looking

7    for?

8         THE DEFENDANT:  July.

9         THE COURT:  July what?

10        THE DEFENDANT:  July 18th?  That's a Friday.

11        THE COURT:  Well, we don't pick on a Friday.

12   I'll pick on a Monday, and I'm picking a murder on

13   the 21st, so that's going to take us through the

14   25th.  I can give you --

15        THE DEFENDANT:  July 28th?

16        THE COURT:  I'm booked on that as well.  How

17   about -- you're out on bond, so it's not like

18   you're being prejudiced.  How about -- I'm kind of

19   booked through July and the first two weeks of

20   August.  How about --

21        THE DEFENDANT:  18th of August?

22        THE COURT:  I was thinking a little later --

23        THE DEFENDANT:  We can go a little later.  How

24   about --

1          THE COURT:  How about the 25th of August?

2    That's a Monday.

3          THE DEFENDANT:  Yes.

4          THE COURT:  State, how does that sound?

5          MR. ANDRE:  That's fine, Judge.

6          THE COURT:  Now, you're sure you have no other

7    motions, correct?

8          THE DEFENDANT:  No, that's it.

9          THE COURT:  Okay.  You're going to be ready for

10   trial on the 25th?

11         THE DEFENDANT:  Yeah.

12         THE COURT:  Listen to me.  If you decide, if

13   you decide between today and August 25th, something

14   happens and you decide that maybe it's in your best

15   interest to have a lawyer represent you, if you

16   decide that, I will allow you, Mr. Bey, to come

17   into court any day, come into court when I'm in

18   here, and then have the clerk call your case,

19   motion up your case, and then you'll have an

20   attorney or I'll appoint an attorney to represent

21   you.  Okay?  If you decide to do that.  In other

22   words, I'm leaving that option open for you.

23         THE DEFENDANT:  Can I say something?

24         THE COURT:  Sure.

1          THE DEFENDANT:  I'm kind of curious.  How is it

2     that the State can deny a notice of removal when

3     you're removing it from the State to the Federal

4     level?  And once it gets to the Federal level, the

5     Federal level tells the State not to move on court

6     procedure once it hits the Federal level.

7          THE COURT:  Hold on a second.  I'm not going

8     back to that motion.

9          THE DEFENDANT:  I'm just asking a question.

10         THE COURT:  But listen to me.  If you were a

11    lawyer, I wouldn't have this discussion with you.

12    You had a motion.  I denied your motion.  Okay?

13              If you have an issue with that and you are

14    ultimately found guilty of this charge by that

15    jury, then you can bring that up on appeal if you

16    wish.  But I didn't see anything in your motion,

17    once again, to bring it up again, that would deny

18    the State its jurisdiction and that would require

19    removal to Federal Court.  Nor did you show me that

20    in your motion.  And it's your burden.  So that's

21    why I had to deny it, okay?  And if you have

22    further questions about that, I suggest you talk to

23    a lawyer.

24              See, let me just say this.  What's

1  happening is you, for some reason, are going in and

2  trying to do some research on your own with no

3  legal training or anything. I'm not saying that

4  you're not an intelligent young man. You most

5  certainly are. Sometimes, though, it may be wise

6  in these types of situations to seek some counsel.

7  That doesn't mean you have to hire the lawyer. But

8  at least seek some counsel. At least get some

9  direction, someone to guide you. Something. I

10  just hate to see you make -- and this is all I'm

11  going to say, because I don't want to talk you out

12  of representing yourself. You have that right. So

13  it's kind of a fine line that I'm walking.

14       What I don't want to see happen to you,

15  Mr. Bey, because I've seen it happen before, is I

16  hate to see you end up going to prison because you

17  didn't have a lawyer. Do you understand?

18       THE DEFENDANT: Yes.

19       THE COURT: When you could have avoided it by

20  having a lawyer. I don't know that that's going to

21  happen. I don't even know the facts of the case.

22  But do you get my point? I don't want that to

23  happen. And I do everything in my power not to let

24  that happen. But sometimes I watch -- very few

1    people have represented themselves in front of me.

2    But when they do, it's never been a good thing.

3            But be that as it may, you have that

4    right, and I will certainly honor that right, as

5    long as you understand the admonishments.  But if I

6    were you,  if the roles were changed and you were

7    the judge and I was you, I would at least seek some

8    advice, at least, from a criminal lawyer.  That's

9    all I'm going to say.  I'll see you -- are you

10   agreeing to this date, sir?

11       THE DEFENDANT:  The date?  Yes, I am.

12       THE COURT:  By agreement, August -- what was

13   the date I said?

14       MR. ANDRE:  August 25th, your Honor.

15       THE COURT:  That's a Wednesday -- no, that's

16   not a Wednesday.  August 25th, 2008.  That's with

17   subpoena for jury.

18       MR. ANDRE:  Thank you, Judge.

19                       (Whereupon, the above-entitled

20                        cause was continued to August 25,

21                        2008.)

22

23

24

1    STATE OF ILLINOIS  )

2    COUNTY OF C O O K  )

3

4        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
         CRIMINAL DEPARTMENT-THIRD MUNICIPAL DISTRICT

5

6            I, Mary N. Leahy, an Official Court

7    Reporter for the Circuit Court of Cook County,

8    Municipal Department-Third Municipal District, do

9    hereby certify that I reported in shorthand the

10   proceedings had at the hearing of the

11   above-entitled cause; that I thereafter caused the

12   foregoing to be transcribed into typewriting, which

13   I hereby certify to be a true and accurate

14   transcript of the proceedings before the Honorable

15   THOMAS P. FECAROTTA, JR., Judge of said court.

16

17

18                          _____
                            Official Court Reporter
19                          License No. 094-002409

20

21

22   Dated this 16th

23   of July, 2008.

24